**COLLIN COUNTY v. SCHULTZ et al.**
**(No. 2569.)**

(Court of Civil Appeals of Texas. Texarkana. May 20, 1922. Rehearing Denied June 22, 1922.)

**1. Counties ⬥114—Commissioners' court alone authorized to bind county by contract.**

In absence of statute authorizing some other agency to do so, the commissioners' court alone has power to bind a county by contract, and this applies to county school trustees, contracting to pay for maps showing a proposed redistricting.

**2. Counties ⬥114—Statute held not to impliedly confer on county school trustees power to contract to pay for maps showing resubdivision of county into school districts.**

Act March 15, 1915 (Gen. Laws, c. 36) § 4 (Vernon's Ann. Civ. St. Supp. 1918, art. 2749c), conferring on county school trustees duties theretofore resting on the commissioners' court as to subdividing county into districts and changing lines thereof, did not impliedly confer power to contract to pay for maps showing a resubdivision of the county and the school districts.

**3. Counties ⬥121 — Commissioners' court's sanction of contract of school trustees to pay for maps did not validate it, for the reason that it would require an order duly made after vote.**

The commissioners' court's sanction of contract made by school trustees to pay for maps showing redistricting of county did not validate the contract, for the reason that if the commissioners' court, in exercise of power it possessed independent of statutes charging it with the duty to create school districts, might have bound the county by a contract for the maps, it could have done so only by an order duly made after a vote thereon by members of the court had been taken.

**4. Estoppel ⬥62(3)—County held not estopped to deny liability on contract because of conduct of commissioners' court.**

Where county school trustees entered into a contract undertaking to pay for maps showing a redistricting of the county into school districts, the fact that the commissioners' court met with the trustees and tacitly approved the contract would not estop the county from denying liability.

Appeal from District Court, Collin County; F. E. Wilcox, Judge.

Action by Charles Schultz and another against Collin County. From a judgment for plaintiffs, defendant appeals. Reversed and rendered.

The county school trustees of Collin county, having redistricted the part of that county not included in independent school districts, in pursuance of a resolution they adopted about April 1, 1916, on April 24, 1916, after advertising for bids for the work, entered into a contract with appellees, Charles Schultz and W. W. Smith, the lowest bidders, whereby they undertook as such trustees to pay appellees $775 for certain maps showing such redistricting. Before the contract was made, the commissioners' court, in session at the time, at the request of the trustees, met with them in the county superintendent's office, and in the presence of appellees discussed the proposed contract, and it was made to conform to suggestions of the county judge, communicated to the trustees the day after such meeting was held. Neither the commissioners' court nor any member thereof objected to the contract or any of its terms as made, but, on the contrary, the trial court found, "sanctioned" it. When appellees had completed 80 per cent. of the work involved in making the maps, the trustees, having been enjoined in a suit commenced against them from proceeding further with the redistricting, requested appellees to discontinue the work, and they

did so. Before the injunction suit was tried, other trustees were elected to take the place of those who ordered the redistricting, and the new trustees rescinded the order therefor. In the meantime appellees' claim for the work they did was adjusted with the old trustees, who approved appellees' account for $620; that sum being 80 per cent. of the amount appellees were to be paid for the completed work. The commissioners' court having rejected appellees' claim for the $620 when presented to them, appellees by this suit sought and were awarded a recovery thereof. The trial court found that it was necessary and proper to the discharge of the duties of the trustees to have the maps they contracted for, that the commissioners' court "sanctioned" the act of the trustees in making the contract, that the work done by appellees under the contract was reasonably worth $620, and that the adjustment said trustees made with appellees was fair and reasonable.

R. C. Merritt, of Dallas, and W. R. Abernathy, of McKinney, for appellant.

G. R. Smith, of McKinney, for appellees.

WILLSON, C. J. (after stating the facts as above). [1, 2] Appellant insists, and we agree, that the county school trustees were without power to bind it by the contract they made with appellees. In the absence of a statute authorizing some other agency to do so, the commissioners' court alone has power to bind a county by contract. Presidio County v. Clarke, 38 Tex. Civ. App. 320, 85 S. W. 475; Mfg. Co. v. Coleman County (Tex. Civ. App.) 184 S. W. 1063; Disinfecting Co. v. Freestone County (Tex. Civ. App.) 193 S. W. 440; Sparks v. Kaufman County (Tex. Civ. App.) 194 S. W. 605. At the time the trustees made the contract in question here, there was no statute expressly authorizing them to make it. Appellees do not pretend there was, but they insist the power was impliedly conferred upon the trustees when the Legislature, by section 4 of the Act of March 15, 1915 (Gen. Laws, p. 68; article 2749c, Vernon's Stat. 1918 Supp.), required them to discharge the duties theretofore resting on the commissioners' court "with respect to subdividing the county into school districts, and to making changes in school district lines."

It is argued that the commissioners' court, charged as it was with the duty "to subdivide their respective counties into convenient school districts" (Rev. St. art. 2815), and with the duty "at any time they deem necessary, to redistrict a part or all of said county" (article 2816), might have bound the county by a contract for the maps, and that as those duties were devolved upon the trustees, they also could bind it.

It may be the commissioners' court could by contract have bound the county to pay for the maps; but, if it could, we think its power to do so must have been referred to other statutes than those appellants rely upon as conferring it. As we have seen, the duty to create the districts was imposed upon that court by articles 2815 and 2816. The manner in which the duty was to be discharged was prescribed by article 2817, as follows:

"School districts shall be so made as to be as convenient as possible to the scholastic population; and said courts shall give the metes and bounds of each district, and shall designate the same carefully by giving the whole surveys and parts of surveys with acreage of whole surveys and approximate acreage of parts of surveys in each district, and the county clerk shall carefully record the same; and each district shall be given a number, which number shall be painted in large letters or figures over the doors of the schoolhouses, said signs to be provided by the district trustees of each district."

It will be observed that a duty to provide maps showing the districts was not specifically imposed upon the commissioners' court. If it was impliedly inposed it must have been because maps were necessary to complete the districting. That they were not we think is plain, and that the Legislature did not contemplate that they were we think is indicated by the fact that it required the commissioners' court to provide maps of districts including territory situated in more than one county. Vernon's Ann. Civ. St. Supp. 1918, art. 2815a. The reason for requiring maps to be provided of districts including parts of two or more counties, and for omitting such requirement as to districts lying entirely in one county, as those covered by the contract in question here did, doubtless lay in the fact that persons interested always had convenient access to the map of the county in which they resided (Rev. St. art. 5312), while they might not have had such access to maps of other counties. If, as we think is true, the commissioners' court, while charged with the duty of subdividing Collin county into school districts, was not authorized by the statutes referred to to make the contract in question, of course the trustees were not; for when the duty was devolved upon them their authority in discharging it did not exceed that conferred by the statute on the commissioners' court.

[3] The trial court found that the commissioners' court "sanctioned" the contract made by the trustees, and appellees argue that that validated it, if the trustees were without power to bind the county to pay for the maps. We do not think so. If it should be conceded that the commissioners' court, in the exercise of power it possessed independent of the statutes above referred to, charging it with the duty to create school districts, might have bound the county by a contract for the maps, the fact remains that it could have done so only by an order duly made after a vote there-

on by the members of the court had been taken. Fayette County v. Krause, 31 Tex. Civ. App. 569, 73 S. W. 51, and authorities there cited. It does not appear from the record sent to this court that such an order was made by the commissioners' court.

[4] Appellees insist, and it seems from his findings that the trial court thought, appellant was estopped from denying liability because of the conduct of the commissioners' court in meeting with the trustees and appellees in the superintendent's office and discussing and tacitly approving the contract. But we are of the opinion the doctrine of estoppel does not apply in the case.

The judgment will be reversed, and judgment will be here rendered that appellees take nothing by their suit against appellant.