## HARRIS COUNTY v. TEXAS & N. O. R. CO.
### No. 10829.

Court of Civil Appeals of Texas. Galveston.
June 22, 1939.

Rehearing Denied July 20, 1939.

Dan W. Jackson and Spurgeon E. Bell, both of Houston, for appellant.

Tom M. Davis, of Houston (Baker, Botts, Andrews & Wharton, of Houston, of counsel), for appellee.

GRAVES, Justice.

This appeal by the County is from a $1,086.50 judgment against it and in favor of the Railroad Company, entered by the 61st District Court, sitting without a jury, as for the reasonable market value of 2,173 cubic yards of gravel belonging to the latter, which the former was found to have converted to its own use and benefit.

The court supported its decree with findings of fact and conclusions of law, the former of which are not controverted here, substantially as follows:

"II. Without the knowledge, consent, acquiescence or approval of plaintiff, or any of its officers, agents or employees, during May, June, July, and August of 1934, employees of Harris County regularly employed to construct, repair and maintain public county roads in Precinct No. 1 of said county, and then engaged in said work under the control, direction and supervision of J. A. Walling, County Commissioner of said Precinct No. 1, Jack Rafferty, Engineer of said Precinct No. 1, and Walter Sayers, Road Superintendent of said Precinct No. 1, removed at least two thousand one hundred seventy-three (2,173) cubic yards of gravel, of the then reasonable market value of Fifty Cents (50¢) per cubic yard, from the old roadbed on plaintiff's right of way south of the Gabriel Lee or Red Bluff Road, and with the knowledge, consent, approval and acquiescence of the aforesaid Walling, Rafferty and Sayers, used said gravel in constructing, maintaining and/or repairing public county roads located in said Precinct No. 1.

"III. The Aforesaid J. A. Walling, Jack Rafferty, and Walter Sayers, knew at the time that said gravel was being taken by said county employees from the old roadbed on plaintiff's right of way south of Gabriel Lee or Red Bluff Road, and none of said parties instructed said employees to cease and desist from taking said gravel which belonged to plaintiff. The county employees who took the gravel as aforesaid were instructed to do so by their formen, Dillard and Triplett, who in turn were instructed to take and remove said gravel by either said Jack Rafferty or Walter Sayers.

"IV. If the gravel belonging to and taken from plaintiff, as aforesaid, had not been taken and used as stated above, it would have been necessary for Harris County to purchase and use for the same purposes an equivalent amount of gravel, paying therefor not less than Fifty Cents (50¢) per cubic yard, so that, by taking and using said gravel, Harris County has received and retained a benefit therefrom reasonably worth to said county not less than the sum of One Thousand Eighty-six & 50/100 Dollars ($1,086.50).

"V. During May, June, July, and August of 1934, R. E. Dillard and R. E. Triplett, truck foremen employed by Harris County, were in direct charge of the employees of Precinct No. 1 of said county who removed the gravel as aforesaid and hauled it to the respective county roads where it was used. During all of said time, said Dillard and Triplett made out and filed with Harris County daily work-reports similar to plaintiff's exhibit No. 2, showing the nature of the work done, the character and amount of material used, the source of the material, the place where used, and other pertinent facts. Harris County failed to either offer in evidence any of said daily reports covering the period in question, or to prove that said reports were not available.

"VI. After all members of the Commissioners' Court of Harris County, Texas, including H. L. Washburn, County Auditor of Harris County, Texas, had been officially notified, both individually and in their representative capacity and as a court, that said gravel had been thus removed and used, they, and each of them acting in their representative capacity, including Harris County and the Commissioners' Court of said County, failed and refused and at all times material hereto continued to fail and refuse to tender or return said gravel, or an equivalent amount of like gravel, to plaintiff, or to pay for the same or any part thereof, although said gravel could have been removed from the roads where used and returned to plaintiff at a cost to Harris County of from one and 50/100 Dollars ($1.50) to Two Dollars ($2) per cubic yard. Harris County did not prove or attempt to prove that it could not have secured an equivalent amount of like gravel for One Thousand Eighty-six and 50/100 Dollars ($1,086.50)

,to tender to plaintiff in exchange for the gravel wrongfully taken from plaintiff.

"VII. Within the time and manner provided by law plaintiff duly and properly presented its claim for said gravel to the Commissioners' Court of Harris County, Texas, which thereupon in all things denied and rejected said claim and thereafter plaintiff filed this suit on the same.

"VIII. Plaintiff has not been paid for the whole or any part of said gravel, although it has continually demanded payment for the same.

"IX. Other than denying the aforesaid claim presented by plaintiff and asserting defenses in this suit, Harris County has not repudiated ·the act of its agents and employees in taking, removing, and using said gravel, as aforesaid, nor has it reprimanded or disciplined its agents and employees for said act.

"Conclusions of Law.

"I conclude as a matter of law that plaintiff, Texas and New Orleans Railroad Company, is entitled to recover of and from defendant, Harris County, the sum of One Thousand Eighty-six & 50/100 Dollars ($1,086.50), representing the reasonable market-value of the gravel so taken and used, and likewise representing the value of the benefits received and retained by Harris County. · To all of which Harris County duly excepts."

."Additional Findings of Fact.

"1. The Court finds as a fact that it was on April 26, 1935, that the minutes of the Commissioners' Court reflect that it was first called to the Court's attention that any gravel had been taken from plaintiff's right of way and the claim for compensation was then refused, but on November 14, 1934, plaintiff, through its attorneys, Baker, Botts, Andrews & Wharton, wrote W. H. Ward, County Judge of Harris County, claiming compensation for the gravel alleged to have been taken.

"2. The Court finds as a fact that .J. A. Walling, Commissioner of Precinct No. 1 of Harris County, whose term expired December 31, 1934, never notified the Commissioners' Court of Harris County of the taking of the gravel from plaintiff's right of way.

"3. The Court finds as a fact that at the time the Commissioners' Court of Harris County first learned of the taking of any gravel from plaintiff's right of way,

the gravel had become a part of the roadbeds of the roads upon which placed, so it would have to be dug out of said roadbed and injure the roadbed, assuming no other gravel was placed ·on the roads to replace that removed."

As presaged by the statement given, it is obvious that the single question to be decided is, whether or not the trial court rightfully thus required the appellant County to pay the value to it of the benefits it so derived from the use of appellee Railroad's gravel, taken without the Railroad's consent by the County's employes, with the knowledge and consent of the County Commissioner, Engineer, and Road Superintendent of the County's precinct No. 1, and applied by those officials in constructing and improving the public county roads in that precinct, reimbursement or payment to the Railroad therefor having been denied by the County itself.

■ This court concludes that the. court below was right in that requirement, pursuant to these authorities: Angelina County v. Bond, Tex.Civ.App., 16 S.W.2d 338; Brand v. City of San Antonio, Tex.Civ. App., 37 S.W. 340; City of Texarkanna v. Keeney, Tex.Civ.App., 50 S.W.2d 339; City of Dallas v. Martyn, 29 Tex.Civ.App. 201, 68 S.W. 710; City of Amarillo v. Ware, 120 Tex. 456, 40 S.W.2d 57; Edwards v. Lubbock County, Tex.Civ.App., 33 S.W.2d 482; Galveston County v. Gresham, Tex.Civ.App., 220 S.W. 560; Harris County v. Neville, Tex.Civ.App., 84 S.W.2d 834; Hoffman v. Davis, 128 Tex. 503, 100 S.W.2d 94; Horne Zoological Arena Co., v. City of Dallas, Tex.Civ. App., 45 S.W.2d 714; Jones County v. Moore, Tex.Civ.App., 4 S.W.2d 289; Marsh v. Fulton County, 10 Wall. ·676, 19 L.Ed. 1040; Sluder v. City of San Antonio, Tex.Com.App., 2 S.W.2d 841; Sparks v. Kaufman County, Tex.Civ.App., 194 S.W. 605; Southwestern Lloyds v. City of Wheeler, Tex.Com.App., 109 S.W. 2d 739; State v. Hale, Tex.Civ.App., 96 S.W.2d 135; West Audit Co. v. Yoakum County, Tex.Com.App., 35 S.W.2d 404; Womack v. Carson, Tex.Civ.App., 38 S.W. 2d 184, affirmed, 123 Tex. 260, 65 S.W.2d 485; Art. I, Sec. 17, Constitution of Texas, Vernon's Ann.St.

Appellant's contrary contentions are couched under four propositions of law, which may be briefly epitomized this way:

Although the stated agents, officers, and employes of the County did so wrongfully, .

and without the knowledge or consent of the appellee Company, trespass upon its premises and remove the gravel therefrom, the court erred, because: (1) the County was not liable for such torts of its agents, servants, and employes; (2) it could only authorize the purchase of such materials to the amount stated when acting through its Commissioners' Court in the manner prescribed by the Harris County Road Law, Special Acts of the 42nd Legislature of 1931, Vol. 27, p. 34, Chapter 15, which law in this instance was not complied with; (3) "Harris County must act through its Commissioners' Court, as such, in the manner prescribed by said law in the purchase of materials to be used in the construction and maintenance of its roads;" (4) "the Commissioners' Court of Harris County never authorized the taking or purchase of said gravel; and, the members of said Commissioners' Court and the County Auditor first learned of the taking and use of said gravel, J. A. Walling never having notified the Court, after it had become incorporated in the roadbeds and could be removed only with injury to the roads at a cost of from $1.50 to $2.00 per cubic yard, hence it could not have been reasonably returned at that time."

It collates these authorities as supporting its position: American Disinfecting Co. v. Freestone County, Tex.Civ.App., 193 S. W. 440; Boaz v. Ferrell, Tex.Civ.App., 152 S.W. 200; City of San Antonio v. White, Tex.Civ.App., 57 S.W. 858; City of Corsicana v. White, 57 Tex. 382; City of Galveston v. Brown, 28 Tex.Civ.App. 274, 67 S.W. 156; Crause v. Harris County, 18 Tex.Civ.App. 375, 44 S.W. 616; Clarke v. Johnson, 43 Nev. 359, 187 P. 510; Corpus Juris, Vol. 71, p. 46, sec. 9; Floria v. Galveston County, Tex.Civ.App., 55 S.W. 540; Germo Mfg. Co. v. Coleman County, Tex.Civ.App., 184 S.W. 1063; Goss v. Fannin County, Tex.Civ.App., 244 S.W. 204; Heigel v. Wichita County, 84 Tex. 392, 19 S.W. 562, 31 Am.St.Rep. 63; Harris County Road Law; Jackson-Foxworth Lumber Co. v. Hutchinson County, Tex.Civ.App., 88 S.W. 412; May v. Juneau County, C.C., 30 F. 241; Nussbaum v. Bell County, 97 Tex. 86, 76 S.W. 430; Peters v. Adams, 115 Misc. 689, 190 N.Y.S. 220; Presidio County v. Clarke, 38 Tex. Civ.App. 320, 85 S.W. 475; Rolette State Bank v. Rolette County, 56 N.D. 571, 218 N.W. 637; Siewerssen v. Harris County, 41 Tex.Civ.App. 115, 91 S.W. 333; Sparks v. Kauffman County, Tex.Civ.App., 194 S.W. 605; Texas Juris, Vol. 11, p. 627, sec. 92, and p. 630, sec. 94.

The very question presented, it is thought, on the legal equivalent of the same state of facts, has been finally foreclosed against appellant in Texas, subsequent to the rendition of many of its cited cases, in Sluder v. City of San Antonio, Tex.Com.App., 2 S.W.2d 841, 842, where the principle upon which that determination was rested is thus stated: "Common honesty and fair dealing require that a county or municipality should not be permitted to receive the benefit of money, property, or services, without paying just compensation therefor." Many times since then, in the line of cases following it, cited above, that rule has become so firmly established with us that any further discussion of it would be a needless repetition; the specified limitations in the Harris County Road Law, upon which alone appellant's defense was rested, could at most have had no greater effect toward the undermining of this settled doctrine of our Supreme Court, on which the causes turning upon this point have since been rested, than the similar charter provisions of the City of San Antonio had in the Sluder case; but the Supreme Court in that holding brushed them aside with the declaration, in purport, that they could go no further than to make a contract for the services there involved void, because it had not been entered into in the manner required by the charter; nevertheless, in circumstances identical in legal effect with those here, it further declared a recovery could be had on quantum meruit for the reasonable value of the services accepted, and that such benefits conferred upon a municipality in like circumstances applied with equal force, whether one furnished money, property, or personal services.

Appellant, however, insists that this cause is different from the Sluder case, in that (1) all its commissioners did not know the appellee's gravel was being so taken and applied to appellant's use at the very time that was being done, and (2) that, when they all ascertained those facts, the gravel had already been applied to the road, hence there had been no real election by appellant to retain the benefits of the appropriation, because the gravel could not then be returned without excessive expense.

As was distinctly held on that feature in the Sluder case, neither of these con-

siderations either affects the justice and right of the appellee's claim for reimbursement, or diminishes the benefits the appellant County had actually received—appellant's liability being measured by the benefits received by it, and not by any loss the appellee may have suffered. The court's declaration in the Sluder case upon that phase being this: "Defendant in error complains that if a recovery is permitted on an implied contract in the face of the charter provisions in question, that the same will not operate to be of any benefit or protection to a city whatever. We do not think such result necessarily follows, for the reason that these provisions effectually prevent any recovery being had under a contract not made in conformity therewith. Officials of the city are therefore prevented from binding the city to pay any unconscionable profit under any contract as a party claiming a right to recover under an implied contract would be limited to the reasonable value of the benefits received by the city. * * *"

Like holdings were also made in the Horne and Martyn cases, supra. Furthermore, commissioner Walling's actual knowledge of the appropriation at the very time it was going on, having been acquired in the performance of his official duty as such officer, was imputed to his fellow commissioners; it would likewise seem that the daily work-records, so found by the court to have been filed steadily with the County during the exact time of all the appropriations, charged the whole Commissioners' Court with knowledge of the facts thereby shown.

Neither, under these facts, can it be said these commissioners had no freedom of choice in returning the gravel after they had obtained actual knowledge of all the facts, even if that were a defense under the doctrine of the Sluder, West Audit Company; and Neville cases, above cited; this for the reason that these commissioners thus had implied knowledge of the appropriations while they were actually going on, and in addition were not prevented at any time by any circumstance from returning to the appellee an equivalent amount of gravel like that taken, which was shown to be readily available at the same values as the benefits it obtained.

Finally, the recited facts appear to make out a clear instance of a deprivation to this appellant of the right vouchsafed it by Article I, Section 17, of the Constitution of Texas, in this provision: "No person's property shall be taken, damaged or destroyed for or applied to public use without adequate compensation being made, unless by the consent of such person."

The cited cases of City of Amarillo v. Ware; Angelina County v. Bond, and Jones County v. Moore, supra, all make that plain; the facts as found are thus thought to bring this cause within that protection, since there would seem to be no substantial difference in principle between damaging property as an incident to the construction of a public road, and the taking of one's private property for the purpose of using and of actually using it as a component part of such road.

Without further discussion the judgment will be affirmed.

Affirmed.